## PIERRO v. TURNER, Sheriff.

No. A-11779. July 2, 1952.

Rehearing Denied Aug. 6, 1952.

(247 P. 2d 291.)

426

Sid White, Oklahoma City, for petitioner.

Granville Scanland, County Atty., and Roy H. Semtner, Asst. County Atty., Oklahoma County, for respondent.

POWELL, J.  Petitioner is confined in the county jail of Oklahoma county. To his application to the court for a writ of habeas corpus the county attorney has filed a response, and oral argument has been heard. From the petition and response, it appears that on May 15, 1952, there was filed in the justice of the peace court of Paul Powers for the Oklahoma City district, a preliminary information charging petitioner herein with the crime of embezzlement. On arraignment, the matter was set for preliminary hearing on May 28, 1952. That hearing has been stayed pending outcome of petition to this court.

It is agreed that prior to the above action, and on April 3, 1952, a preliminary information charging petitioner with the identical offense of embezzlement was filed in the justice of peace court of Ben LaFon for the Oklahoma City district; that on March 3, 1952, a general grand jury was called and convened in and for Oklahoma county and that said grand jury was in session until discharged on May 6, 1952.

Respondent sets out that while the grand jury was in session, petitioner, being unable to post bond, was incarcerated in the county jail of Oklahoma county by respondent; that on May 15, 1952, and subsequent to the discharge of the grand jury, the original preliminary information filed before Ben LaFon, justice of the peace, was dismissed on motion of the county attorney of Oklahoma county, and refiled before Paul Powers, justice of the peace, as heretofore set out, and bond set at $2,000. This court, in view of the facts peculiar to the case and pending our consideration of the issues, on day of oral argument reduced the bond to be posted to $500.

From memorandum brief filed with this court and after oral argument, it is the contention of counsel, by reason of the facts recited, that the petitioner, Bill Pierro, is entitled to his discharge from further incarceration and from further prosecution on the charge for which he has been held. In support of his position counsel states:

"The whole code of criminal procedure (so far as germane hereto) was enacted immediately after statehood. It all accounts the constitutional provisions guaranteeing the defendant a speedy and public trial and due process of law."

Counsel then cites §§ 338, 382 and 383 of Tit. 22 O. S. 1951, which provisions will be considered hereinafter.

Counsel then further states:

"Remember that the grand jury arose to vitalize Magna Carta and to prevent malicious and mischievous prosecutions, the last sentence of Sec. 383 must surely be read as a bulwark between the citizen and an over zealous law officer. Will it do now to say that the county attorney may escape this wholesome curb by evading the historic grand jury to perhaps work persecution before a magistrate? * * * I know of no precedent for my argument and can do nothing further, than urge the statutes upon you. If this fail, the barriers are down and every citizen holds his liberty by grace of the county attorney."

To commence with, it is important in considering the matter presented that notice be taken of the fact that different from procedure in Federal Courts and different in many respects from the procedure in many state courts, in Oklahoma there are two distinct methods of prosecution of persons charged with felonies and that have been held to be concurrent remedies. One is by an indictment presented and filed by a grand jury and the other is by the filing of an information in the district court, signed by the county attorney after a preliminary examination has been held. Const. art. II, § 17. In some counties of this state but few grand juries have ever been convened since statehood. Practically all prosecutions for felonies have been by information, rather than indictment. As recently pointed out in the case of Coats v. State, 90 Okla. Cr. 217, 212 P. 2d 141, 214 P. 2d 455, this court, as well as the Supreme Court of Oklahoma, settled the constitutional issues and considered the philosophy supporting this procedure in the early cases of In re McNaught, 1 Okla. Cr. 528, 99 P. 241; and Ex parte McNaught, 1 Okla. Cr. 260, 100 P. 27.

There is an interesting note in 120 A.L.R. 358, concerning the historical background of the grand jury system in England, where it originated, in the Federal judiciary of the United States, and in courts of various states of the United States, and particularly treating the part played in the system by the Attorney General or Solicitor General for the Crown, or the District attorneys or County attorneys in the United States. And whether the prosecution be by information or indictment, it would appear that the influence of the prosecuting official is about as potent in the one method as the other. In fact, the success of either system depends on the competency of the prosecution official and his staff. But either course is not lacking in safeguards for the citizen charged with crime. See 24 Am. Jur. 832; Hurtado v. People, 110 U. S. 516, 4 S. Ct. 111, 292, 28 L. Ed. 232; and United States v. Thompson, 251 U. S. 407, 40 S. Ct. 289, 64 L. Ed. 333, and note.

Judge Doyle, in Re McNaught, supra, said:

"After a careful research, and a full consideration of all the authorities submitted, in connection with the provisions of our Constitution and laws, we are of opinion that since the organization of the state (November 16, 1907) the prosecution of felonies by indictment and information have been, and are now, concurrent remedies. We are fully satisfied that the framers of our Constitution intended to abolish the grand jury system, except that it might be invoked for those special purposes, such as the investigation of public officers, the failure of public prosecutors to do their duty, and those peculiar conditions of public disorder which sometimes arise and make prosecutions by information impracticable."

It should be kept in mind that the sections of the Constitution and statutes are to be construed so as to give effect to every part thereof. Oklahoma Natural Gas Co. v. State ex rel. Vassar, County Attorney, 187 Okla. 164, 101 P. 2d 793. Also, to ascertain the intention of the Legislature in the enactment of a statute, the court may look to each part of statute, to other statutes on the same or relative subjects, to the evil and mischief to be remedied, and to the natural or absurd consequences of any particular interpretation. Magnolia Pipe Line Co. v. State, 95 Okla. Cr. 193, 243 P. 2d 369.

By Art. II, § 20, of the Oklahoma Constitution it is provided:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial * * *."

By Tit. 22 O. S. 1951 § 338, it is provided, as stated by petitioner, that:

"The grand jury must inquire: 1. Into the case of every person imprisoned in the jail of the county or subdivision, on a criminal charge, and not indicted. * * *."

From the facts heretofore recited, we have seen that the petitioner by reason of inability or failure to make bond has remained in jail since April 3, 1952; that a grand jury was in session when he was first incarcerated, and remained in session for thirty-seven days after defendant's incarceration without considering his case. Thus, inquiry is as to what effect the failure or refusal, as the case might be, of a grand jury upon investigation to find an indictment would affect the right of a county attorney to file an information.

Apparently other business being considered by the grand jury during the limited time in session crowded out an investigation of petitioner's incarceration, or at all events the grand jury failed to act. It might be noted in this connection that after preliminary hearing and filing of information it is often five or six months in some counties before a jury is available for trial of pending cases, so that if an accused is unable to make bond he will necessarily remain in jail until the convening of the first jury term of court. To never fail to reach all cases that might be filed would require that a grand jury remain in continuous session.

About the only material difference between the facts in the within case and the case of Jordan v. Turner, — Okla. Cr. —, 245 P. 2d 748, is that in the Jordan case there was a preliminary complaint pending against Jordan when the same grand jury as in this case convened, but Jordan was not incarcerated, having been released on his own recognizance. In the Jordan case this court construed Tit. 22 O. S. 1951 § 258, subd. 4, in connection with the statutory provisions cited by petitioner and heretofore mentioned. The subdivision reads:

"If a preliminary information be filed or is pending within three days before the grand jury convenes, or while it is in session, no examination shall be had, but the accused shall be held under bond or confined until the matter can be submitted to that grand jury or until that body adjourns."

Jones, J., speaking for this court, said:

"This statute would indicate that the facts pertaining to all preliminary informations pending within three days before the grand jury convenes or while it is in session should be submitted to the grand jury, but reading the last four words in connection with the remainder of the paragraph it is apparent that it was the intention of the legislature in the adoption of this law that no preliminary examination should be held while the grand jury is in session but that the accused should be held under bond until the matter could be submitted to the grand jury *or until body adjourns* (emphasis ours). Which means that if the grand jury adjourned without consideration of the charge alleged in the preliminary information the county attorney was free to continue with the prosecution of the charge pending against the accused."

A similar conclusion was reached by the Criminal Court of Appeals in the early case of Rea v. State, 3 Okla. Cr. 269, 105 P. 381, 382. There this court had for consideration a situation where the defendant had been investigated by the grand jury as provided by statute, now Tit. 22 O. S. 1951 § 382, and the required nine grand jurors not having concurred, they refused to find an indictment against him, and the trial court did not, as he was authorized by statute, now Tit. 22 O. S. 1951 § 383, direct that the charge be resubmitted to the grand jury. The

statute states, in part, "But without such direction it cannot be again submitted." After referring to the statutory provisions, this court, through Furman, P. J., said:

"This statute has no application to offenses prosecuted by information, and the court did not err in overruling the motion to quash the information upon this ground."

By further research we find an annotation in 120 A.L.R. 713 where it is said:

"While there is a conflict of authority in the comparatively few jurisdictions in which the present question has arisen, and the question is somewhat dependent upon particular statutory or constitutional provisions, it appears that in the majority of instances the courts have taken the view that the right to file an information is not affected by the failure or refusal of the grand jury upon investigation, to find an indictment."

The case of Rea v. State, supra, along with other cases, are cited in support of the rule announced.

Thus, the questions raised by appellant have heretofore been decided contrary to his position. And summarizing, for attempted clarity, it would appear that in this state, where a prosecution is by information, the preliminary complaint is first heard before an examining magistrate, and if probable cause is shown, the accused is bound over to the district court, and information is filed. Where prosecuted by indictment, the grand jury, in the place of the magistrate, determines whether the accused shall be indicted and if nine of the twelve jurors agree, the county attorney prepares an indictment. See as to subject generally, Tit. 22 O. S. 1951 §§ 171, 176, 178, 179, 251, 253, 255, 268, 301-304, 311-343, 381, 413. But whatever the method of prosecution, still, it is the county attorney in any case, except where his office might be involved, who has to assemble the evidence, prepare the information or the indictment, depending on method of prosecution, and his diligence and professional training and judgment will largely determine the outcome of any prosecution. If he does not in a prosecution have sufficient evidence to make out a case for the consideration of the jury, or the court where jury waived, it is reasonable to assume that the defense counsel would demur to such evidence and that it would be sustained by the trial court, and regardless of the prior thoughts of an examining magistrate or of a grand jury, as the case might have been. It requires evidence to produce convictions, so that the apprehension of counsel that prosecuting attorneys might turn into Simon Legrees or take on the powers of a King John, are not well founded. It has long been settled that one examining magistrate may decide that probable cause has not been shown on preliminary hearing in a particular case, but that such fact does not prevent the county attorney from filing the same charge against the same person before another examining magistrate. In U. S. ex rel. Wanner, App't. v. Levy, U. S. Marshal, 268 U. S. 390, 45 S. Ct. 516, 517, 69 L. Ed. 1010, Mr. Justice Sutherland, in justifying a similar rule for hearing before a United States Commissioner, speaking for the court said:

"Under state law it has uniformly been held that the discharge of an accused person upon a preliminary examination for want of probable cause constitutes no bar to a subsequent preliminary examination before another magistrate. Such an examination is not a trial in any sense, and does not operate to put the defendant in jeopardy."

See, also, Ridenour v. State, 94 Okla. Cr. 92, 231 P. 2d 395; Hembree v. Howell, Dist. Judge, 90 Okla. Cr. 371, 214 P. 2d 458; Ex parte Oxley, 38 Nev. 379, 149 P. 992; State v. Townsend, 150 Kan. 496, 95 P. 2d 328; State v. McCombs, 164 Kan. 334, 188 P. 2d 922, 16 C .J. p. 334, note 40; 22 C.J.S., Criminal Law, §§ 347, 348. Defendant, of course, would be entitled to prompt preliminary hearing. Likewise, as we have seen, the trial court may direct the resubmission of a charge before

the same grand jury or another, but by authority of the Rea case, and of the Jordan case, where the court does not direct a charge to be resubmitted to a grand jury, when the grand jury is dismissed the county attorney may proceed by preliminary complaint for the same crime before a magistrate, and then where probable cause shown, file an information in the district court. The reason for this is fairly obvious. The county attorney as he investigates a case may at a later date, perhaps a few weeks or even months, discover overwhelming and direct evidence of an accused's guilt, where at first he might have been relying on not too strong circumstantial evidence, or on hesitating witnesses, and so long as jeopardy has not attached, the defendant's substantial and constitutional rights will not have been violated, and the accusation or charge against him can be disposed of on its merits, which is as it ought to be.

The writ is denied.

BRETT, P. J., and JONES, J., concur.